I'm happy to take a breather. Thank you. Thank you. All right, counsel, whenever you're ready. Thank you, Your Honor. And may it please the court, my name is Beau Howard. I'm here to represent the appellants in this appeal today. With me is my law partner, Gary Freed, and also our associate, Desmond Dennis. Also in the courtroom today is Mr. Ron Leventhal, who is the principal of, in some respect, of each of the appellants. We appreciate the court taking the time and opportunity to hear us on this matter. We have the pleasure of representing the appellants, which are a variety of companies that either own property or have some sort of function with respect to the administration of a luxury residential and resort development called Hampton Island Preserve. It is on the southern coast of Georgia. It is a near coastal development. It's not an actual island, but it goes by the name, and it's very lovely. The underlying matter was a bankruptcy that was filed by the debtor. It was Hampton Island Owners Association. There are a variety of reasons why the owners association filed the bankruptcy, but notably this was one of the only near coastal developments that didn't fail with respect to the payment of its bank debt. Again, counsel, how you choose to spend your time is up to you, but we've read all the briefs. We're familiar with the record. Thank you, Your Honor. I appreciate it. The appellants were non-parties to the bankruptcy. As stated in the briefing, they were either listed as creditors of the debtor or they were listed as parties in interest of one variety or another. The overall dispute involves an order compelling production of documents and an order by the court sanctioning the appellants for the supposed failure to comply with the order compelling the production of documents. We think that the order was an error for two principal reasons and then a third that I'll be happy to get into. The September 16th order sanctioning the appellants in this case does not make specific findings of fact as to which of the appellants supposedly did or did not comply with which specific components of the court's order compelling production of documents. But you never raised that before the district court, did you? You lumped them all together. Well, Your Honor, it's a good question. First, some of the appellants were represented by Schroeder, Wheeler, and Flint. A firm, another set of the appellants were represented by Scargans-Williams. They both filed different sets of briefings on this issue, and the issue that I'm discussing right now was in fact raised not only in the briefing before the court, but it was raised during an evidentiary hearing as well, during which Mr. Leventhal, among others, gave testimony about the different and varying levels of compliance of the different appellants. So we do believe it was raised, Your Honor. Well, with respect to the joint and several liability issue, which I think you're getting to, the arguments in your brief focused on the tax returns and the fact that some of the entities didn't file tax returns. But couldn't the court have held that the entities jointly and severally liable based on the inadequacy of their production of general ledgers the first time those were produced redacted, as I understand it, by the February 2 deadline? Why isn't that enough to hold them liable? Thank you, Your Honor. There are varying levels of compliance throughout the eight of these entities. And in order to understand exactly what they did on February 3, which was their production deadline, it's important to look at the specific request that was made of them. Let me ask you this first. Were the requests the same to each of the entities? The requests were the same to each of the entities, Your Honor. Okay. And didn't they each produce their ledgers in paper form but redacted many entries by February 3? No, some of them did this. Some of them didn't have ledger entries to produce, and some of them produced what we would call a special report that was printed from the general ledger that included the information that was requested in the specific request. But no entity produced ledgers in native format. Is that correct? At that point, no entity produced a complete general ledger in native format. That is correct. Now, the request didn't ask for ledgers in native format. So what the request asked for was, and if you'll bear with me, I think the request is, the language is not as direct as you would expect. Because if what the request had been was, please produce each entity's complete general ledger from January 1, 2006 through the present, that would have been something that the parties could understand. Instead, what got requested was each Leventhal's entity's financial records, including any general ledgers for the period after January 1, 2006 to date, reflecting whether the entity paid fees to HIOA and including. And then it goes down through a list of specific types of financial information about payments made from the entity to the homeowners association. And the way that the appellants understood this request was that they could simply produce excerpts from their general ledgers to the extent there were any reflecting these payments from the entity to the HIOA, homeowners association. Was there anything in the request that indicated that what they wanted were information so they could tell when the entries were made on the general ledger? There's nothing in the specific request that states that. So no, absolutely not. The other issue about this, and I understand that there are some concerns that were raised in the appellee's brief about supposed metadata once the native format files were produced that demonstrate that some of the entities had backdated or fabricated evidence in their general ledger. This is absolutely false. What is true is that there were entries made in the accounting software in the days, two or three days leading up to the production of the general ledger. But there's an in-house accountant for each of these appellants who said and testified in her deposition that it was her job to go through and bring the books up to date to make them correct and to make them accurate and to reclassify entries that may have been improperly classified. But effectively her testimony was, and it was taken by appellee's counsel, that nobody tells her what to do. Nobody tells her how to keep her accounting records. But she had gotten behind and her job was to bring them up to date so that things could be produced. So that was the testimony on that. It was also brought to the court's attention during the evidentiary hearing by Mr. Leventhal. So in terms of the general ledgers, the answer is basically the same as with the tax returns. Some of the entities produced them. Some of the entities didn't have them. And some entities produced excerpts from their general ledgers as they believed the request specified. All this done by the production date, February 3rd. The other category of documents that was at issue was organizational charts. And it's a very similar issue, Your Honor. If what you look at is the language of the request, the request doesn't say, which is ultimately what the issue became, produce your operating agreements. It says documents showing who or what entity owns each Leventhal entity directly or indirectly, the percentage of each owner's ownership interest in which Leventhal, and it goes on and on and on and on and on. And so what was produced at the time of the production was organization charts that showed up the chain of ownership and down the chain of ownership. Ultimately, one of them had a mistake on it for a reason that was explained to the court and to counsel, but the mistake was clarified during a 2004 examination, and every entity had effectively produced their organization charts. The later request was, well, what we really meant was give us your operating agreements. And if that was the case, it wasn't specified in the language of the request. So when we say that we have a variety of entities that had a variety of different levels of compliance, we believe that they all actually complied with the court's order to produce the documents specified in the request for production by February 3rd. Subsequent to that, there was some discussion with counsel about whether or not the production was really what he had anticipated or what he intended. And we believe that because we had a motion to compel filed before there was ever a good faith process that took place. We had a motion to compel that was filed before there were ever subpoenas served in this case. There was never an opportunity for the counsel to get together and really hammer out what needed to be produced, what was produced, did these documents exist, did they not exist before it got to the court. The court had earlier ordered, I mean during the hearing, had ordered you all to produce documents, that he had overruled your objections and had ordered you to produce documents. Had it not? I don't believe it's exactly so, Your Honor. The bankruptcy court on November 3rd held a hearing, and in the hearing it was a motion for Rule 2004 examination of the appellants. And the appellant's objection at that time was not, well, we object to request number one for reasons X, Y, and Z. It was, we object to sitting for Rule 2004 examinations at all because we're non-parties to this case and we believe that our depositions ought to be taken if they're going to be taken in this piece of related civil litigation that's actually pending in Liberty County. Those are the objections which the court overruled. What she actually stated about these other issues, the tax returns and all this, on November 3rd, was when the subpoena is issued, the entity produces some of the documents, objects to others, the parties are required by the local rules to try and work it out. If they don't, then they come back here, and if they're asking for federal and state tax returns for these years, here's why we object, and then the court can deal with it. I can't read these and say, well, that doesn't sound legitimate when I don't even know if there are documents responsive to that. And then she says we've got to operate a little lower than 10,000 feet, and then she concedes that these issues aren't even ripe. So she is not, the bankruptcy court is not at that point ruling on the specific objections. So I'm not sure I read it the same way. I mean it seems to me like, and I don't have the language in front of me at the moment, but I will find it. I thought that the bankruptcy court, even though it talked a little bit about the subpoenas, et cetera, that the bankruptcy court specifically said I'm overruling the objections, and specifically with respect to Exhibit A, and, you know, the documents will be produced. I thought it actually said the documents are to be produced. Maybe I am remembering this wrong. Maybe you have that language right at your fingertips, but that's my recollection. I do, Your Honor. So on November 3rd is the only time that the parties discussed with the court the substance of whether tax returns will be produced or not. There was a subsequent hearing about a motion to compel that happened on January 14th, Your Honor. And at that hearing, the court ordered the documents to be produced by February 3rd. Now, I see that I've run out of my time. That's okay. You can answer the question. The language I was looking at says order that the objections are overruled and that the motion is granted to permit examination and production of documents in accordance with Bankruptcy Rule 2004B. Correct, Your Honor, and the way that— And then it says if attendance and production of documents can't be obtained voluntarily, movements may compel attendance and production of documents as provided in Rule 2004C. Correct, Your Honor. And Rule 2004C is the rule that allows them to serve a subpoena on these non-parties. And the issue here is that there can be no compulsion of production of documents without reaching out and asserting jurisdiction over these non-parties. In order to have due process, they have the entitlement to be served with a subpoena, which is what they ultimately required to have happen here. But weren't subpoenas ultimately served? Subpoenas were ultimately served, Your Honor, but they weren't served— Before the court ruled. They weren't served until 21 days after the motion to compel was filed. Right. So they were served five or six days before the court ruled. Right. Okay, but at the time that the court ruled on January 14th that the documents would be compelled and would be produced, the court ultimately said you are allowed to make and file objections, but I want you to be aware that if any of them are not sustained, you're going to be sanctioned for this, which cuts off the entire possibility of the good faith process that the court had described on November 3rd. So without this process that the court describes on November 3rd, you serve the subpoenas, then they produce the documents and they make their objections, and then the counsels try and work it out in good faith, and then you bring it to the court's attention. Without that playing out, there was never a ripe issue for the court to decide. So the compel order itself was in error because the court was compelling production of documents based on subpoenas that hadn't even been served when the compel motion was filed, which means that there could not have been a good faith effort prior to bringing the motion. Without good faith, we don't have an opportunity for the parties to work these things. Thank you, counsel. Thanks. Good morning, Your Honors. May it please the court. I'm Steve Hall. I'm with the law firm of Baker Donaldson, and I represent what we've been calling the owners in this case. It's a collection of residential owners, and I know the court is aware of that. The bankruptcy judge in this case, after multiple, multiple opportunities to work through these issues, issued a final order to the appellants that said two things. You can have objections, but they must be filed, and you must produce documents by February 3rd. That was a clear order. It came out after all of these comments about subpoenas being filed and what was what and what was not what was done, and the appellants did not follow the judge's order. They specifically, and I submit intentionally, violated it. They served objections without filing them because I think they were worried that the objections were frivolous and they would be sanctioned, so they served them, and then they failed to produce the documents and argued that they shouldn't have to produce them based upon the objections that they never filed as they were instructed. It's as simple as this at the end of the day. You get an order, you follow that order. If you don't follow that order, you get sanctioned, and that is precisely what happened in this case. Now, we asked for the oral arguments in front of your honors because it is a complicated record. It's long, but when you get down to it and you really distill through all of this noise that's going on about other things, it comes back to what I said before. It's as clear as that. Let me talk about the three grounds that I think they've raised here, and let me first talk about the standard of review because I think it's pretty important. It's an abuse of discretion here. We would have to have the appellant showing that the judge made a clear error, followed an improper rule. I would submit that none of that has been shown here at all, and, in fact, I would submit that there's one other legal point that needs to be made here, and it comes out of the Chundasama case, which is, I think I'm pronouncing that right, Chundasama v. Mazda, and it's footnote 34. And essentially what this says is when we're looking at a party's adherence to an order from the court, even if there is a problem with that order, even if they think that it may have been improvidently granted, they're still required to follow that order, and particularly where if what's happened is you can't identify what's wrong with the order very easily, that they think is improvident, and the sanctions are well thought out and measured. Both of these are clear here. We can't figure out anything. I put my head to this. I can't find anything that is wrong with a bankruptcy judge turning around saying, look, I've heard your objections already on all of this. I've overruled them, but I'm going to let you go ahead and respond to the request. I'm going to let you make your objections. You've got to file them so that I can review them and keep this process moving along. You've got to file them, and to the extent you don't file them, you've got to produce documents by February 3rd. That's about as proper and appropriate as can be. And what happened is they just didn't do those types of things. So let me move to the three points that they've raised here. The first point is that you shouldn't have assessed joint and several liability against all of us. And their argument is not that there's something wrong with joint and several liability inherently. The argument is much more of a nuanced, factual argument. They're claiming that some of these entities actually produced everything that they were supposed to but were lumped in on the sanctions anyways. Well, they have not demonstrated that in this filing. The most they can say is they've demonstrated that here and there one party didn't have a tax return, another party didn't have a general ledger. But that's not what the judge—the judge's order was clear, and it was a specific finding as to each of the appellants. The finding was you didn't file the objections that I told you to file if you were going to stand by them, and you didn't produce everything on this lengthy list. For them to overturn the order, they would have to come in with some sort of evidence that says, here's where I produced item number one, number two, number three, number four. And, as the court has noted, they would have had to have raised this in the court below. What is being argued instead is a convenient but improper argument that just because I didn't have one or I did have one or didn't have one of 20 items, I therefore must have responded and produced on everything else. And that's not supported in the record. It's certainly not clear error. The second argument that they have raised in this case, and the third argument, both go to things that I would submit are efforts to raise as an issue items you had a remedy for at the time and chose not to exercise. And I'll start with Mr. Levinfall's health. There is no question that there were points in time where Mr. Levinfall's health was an issue in this case. But what there also is no question about is that there was never a request for an extension of time. Quite the contrary, as we've pointed out in our moving papers, the indication from the appellants was, we're fine, we're here, we're ready to go, Mr. Levinfall was sick, he's back to work now, he's got a staff, he's got a whole team of lawyers. So you cannot claim error, you certainly cannot claim clear error, when you as the litigant didn't ever turn around to the judge and say, hey judge, can we have some more time? They didn't ask us, we would have given it had it been asked. It's an after-the-fact effort to undermine the ruling, is what it is. We see a very similar argument in their final claim of error, which is the judge forced us to respond to a subpoena, which was way too confusing for us to be responding to. Well, factually, let me start factually, because there was, I think, some incorrect statement of the record. What happened was the subpoenas were proposed in October. The defendants, the appellants, would not agree that the subpoenas could be issued. We went to a hearing to determine whether or not the subpoenas would be issued on November 3rd. During that hearing, the appellants raised all manner of objections. They were argued particularly with respect to the tax returns. The argument was, hey look, we don't have to, the very argument they're making here, we don't have to produce these tax returns unless they show something that relates to the HOA. And the court said, how can I tell if you haven't produced them? Precisely, and now what's being argued incredibly is that rather than that being a clarification of what the order meant, they're now arguing that, and this has permeated everything in this case, they're now arguing that, oh no, no, that was an oral ruling that was somehow countermanded by the subsequent written order. That is not at all what happened. We went forward then. They got another opportunity in January. They again, when we brought a motion to compel because they would not cooperate, the court held another hearing, and in that they argued again about the extent of the subpoenas, again at length about the tax return, to exactly the same result. The court said, produce them. And let me be clear on this. They had tax returns. Some of them maybe didn't. Why they didn't have them, whether it was pass-through entities or things with the IRS, I don't know. But some of them had it, and not one of them produced the tax return. There could have been no confusion whatsoever as to what they were supposed to do. But let's presume there was confusion as to what they were supposed to do. I actually had almost a two-hour conversation with the lawyers on the other side going through every single one of these requests immediately after the January hearing to make sure there was no confusion, and there wasn't any. But let's say there had been. They had a remedy. The court said, file any objection that you want to. You just have to file it. They didn't want to file it because they didn't want to get sanctioned for improper objections. So what we've come to after all of this is that sophisticated entities with sophisticated trial counsel with every opportunity in the world to raise the objections that are being raised now chose not to raise them. Chose not to raise them. It was intentional, I believe, at the time. It was a strategic decision. And the judge was entirely right to follow and do what she did. As a matter of fact, I will tell you I was extraordinarily impressed with Judge Mary Gray Steele throughout this whole process. It was complicated. There were a lot of different things. She was measured from day one. She went through all of the things she was supposed to do methodically. We had a day-long hearing on whether or not these sanctions were appropriate. And she limited down considerably what I had requested. But I think it was a very well-measured and thought-out order. And before stepping down, I'll just say one more thing. Really, a lot of the root of their case is an argument that's derived from the Chundasama v. Mazda case. And I do think that's a good case to look at and compare what happened in that case versus what happened in here. In Chumasama, the district court, and it's pretty clear Judge Toflat was the author and judge, it's pretty clear from his opinion that the sense was the district court had just abrogated its responsibility. And what had happened was the plaintiff had issued, it was Butler, Wooten, and Overby, some very aggressive discovery requests, and Mazda had objected. And they brought in some extraneous issues. Mazda had objected vehemently. Mazda, on its own accord, filed the objections multiple times. It then contacted the court 25 times, according to the opinion, and asked for the court to review its objections. The court wouldn't do it. And ultimately, the court said, you go respond. I'm not going to review your objections. And what that led to was Mazda doing a couple of things. One was not responding to anything, what the court called self-help. The other one was continuing to argue and do these types of things. But at the end of the day, the court entered the most draconian sanction it could and struck the pleadings based upon this. It was entirely right to reverse that decision on the facts of that case. I'm sure Judge Toflat will be happy that you think so. Well, if he says it, it's got to be right. But if you compare that to here, there was no effort. They didn't follow the order to file the objections. They didn't come in and argue. They were heard twice and overruled on it. This is just straight-out defiance of a court order. And I would submit that it would have been error under Rule 37, under Rule 105, and it would have been a profound mistake for the bankruptcy court not to have awarded these sanctions. Because if you allow this type of strategic obfuscation to go forward, it kills the process. It kills the process. It puts the other lawyer in the position that he's got to go fight for things, and the tar gets on everybody, and it just becomes a mess. So I think Judge Mary Grace Gill did a wonderful job on this. I think there was no error whatsoever. I think when you sift through a lot of the extraneous arguments, you see it's as simple as you didn't follow the order like you should have. And if there are no other questions, I'll rest. Thank you, counsel. Counsel. Thank you, Your Honors. As to the point about strategic obfuscation, Your Honor, I will note that the court, Judge Deal, noted that there was a lot of strategic obfuscation on the part of both parties. Now, we were not counsel in the case below. And I will say that at the final hearing on this case and in her final order, she said that she was not impressed with counsel on either side. There was over-lawyering. There was aggressive. I hear you, and those are fair points, but I don't see how that gets you out of sanctions. Just because the other side may have also deserved them doesn't mean you don't. Certainly. Although, in a case where you are trying to unlock the court's power to use its inherent authority or its discovery authority to impose sanctions, there is always a requirement in bankruptcy courts, civil litigation, wherever we are, of good faith going into it. And when the two parties, neither of them have acted in good faith, then the court really ought to leave them where they stand. And in this case, all of the— But where's the clear error here? Certainly. Or the abuse of discretion, I should say. The clear error in abuse of discretion, the most clear one, is the court's failure to identify which specific party actually committed sanctionable conduct. Let me interrupt you for a second. Mr. Hall said that you haven't demonstrated that any party produced what it was supposed to and was lumped in any way in the sanctions. Can you identify that it's not a party, it's actually an entity, what that entity is and explain how it produced everything that it was supposed to? Certainly. In the two briefs in response to the ultimate sanctions motion that were filed by Appellants Bankruptcy Council and during the evidentiary hearings, those would be the three pieces of evidence in the record, it was explained to the court that Liberty Capital had tax returns for 2006 through 2009 but didn't produce them because it thought that they were not specifically requested. Other than Liberty Capital, every single other one of the appellants, either was a single-member LLC or something, didn't have one. They either had failed to file them or they should have filed them and didn't or they weren't supposed to file them. So those were entities that hadn't delayed in producing documents. They simply didn't have documents to produce. That might be the tax returns, but what about the ledgers and the other documents? Absolutely. Absolutely. The general ledgers, the following parties didn't have any ledgers to produce at the time or the testimony was they didn't have any ledgers to produce at the time. Blue Heron, Hampton Island Club, Reflections House, Turtle Lake, Hampton Land Holdings. The followings produced ledgers that were redacted, Fulcrum and Liberty. The following produced a lecture excerpt that we were discussing previously, Hampton Island LLC, and all of this was established through testimony at the evidentiary hearing. As to the organization charts, there was really no dispute that the organization charts were produced. It was just there was some dissatisfaction with the content of them ultimately, but that was explained. So these are the kinds of issues that we're dealing with where maybe one of the parties or maybe two of the parties had documents that they held back because they did not believe that they had been specifically requested in the subpoena, but that was a difference of opinion about what that Exhibit A meant. It wasn't a difference, that wasn't a refusal to comply with a court order. Other parties simply didn't have documents. Were the property owners told on February the 3rd that certain entities don't have tax returns or don't have general ledgers? I believe that that information trickled out in the days following, and I will say to appellate counsel's credit there was a new lawyer who entered an appearance in the few days leading up to the February 3rd deadline, Hayden Kepner. He appears throughout the record subsequently. He was trying to get up to speed at the time. The record reflects, and he did the best that he could to get together the documents and get them produced. I see my time is up. All right, thank you, counsel. We'll be in recess until tomorrow.